UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Anytime Fitness, LLC, a<br>Minnesota Limited Liability<br>Company, | File No. |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| Matty Gray Fitness, Inc., a<br>Missouri corporation, Matthew<br>Gray, an individual, and Christy<br>Gray, an individual, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Anytime Fitness, LLC ("ATF") for its complaint against Defendants Matty

Gray Fitness, Inc., Matthew Gray, and Christy Gray (collectively "Gray") states and

alleges as follows:

## INTRODUCTION

Gray and ATF entered into three written franchise agreements, under which Gray

opened and operated 24 hour co-ed fitness centers at three sites approved by ATF.  For the

past 5 years, ATF taught Gray how to develop and successfully operate a limited service

24-hour co-ed fitness center business.  ATF provided Gray with the information and know

how to get their business up and running, and then to successfully operate their fitness

locations, including proper club layout, services offered and the pricing of those services,

implementation of security systems and related technology developed by ATF and an

affiliate of ATF, ATF's membership agreement forms which were prepared and distributed

by ATF exclusively to its franchisees, access to ATF's suppliers, training in the methods of operating a largely unstaffed 24 hour co-ed fitness business, promotion and sales of fitness club memberships, processing of memberships and membership fees, and numerous other trade practices of ATF and the Anytime Fitness franchise system.  In exchange for ATF putting Gray in business, Gray agreed to operate their three Anytime Fitness centers for the five year term of their Franchise Agreements and that during the term of their Franchise Agreements, they would not operate, or assist anyone in operating, any other fitness center. They further agreed that for two years after expiration of termination of their Franchise Agreements, they would not operate a fitness center at the same location or within a radius of other Anytime Fitness centers.

Gray is now breaching the non-compete covenants of all three of their franchise agreements by converting one of their Anytime Fitness franchised locations to an independent fitness center.  That center would possibly compete directly with their franchised businesses and, more importantly, with Anytime Fitness' other existing and future franchise locations.  Compounding their breach, by operating an independent fitness location while still an Anytime Fitness franchisee, Gray has access to confidential information such as ATF's pricing and marketing strategies that allows their independent location, "Fitness, Inc.", to have a significant unfair competitive advantage.  Additionally, Gray has transferred all the members of their now competing location to one of the Anytime Fitness locations to assure they could give those members all the benefits of the Anytime Fitness system.

These outrageous acts by Gray require the issuance of immediate injunctive relief by this Court to avoid further injury to a significant Minnesota company.

## PARTIES

1.      Plaintiff ATF is a limited liability company existing under the laws of the State of Minnesota, with its principal place of business located at 12181 Margo Avenue South, Hastings, Minnesota.

2.      Defendant Matty Gray Fitness, Inc. is, on information and belief, a corporation existing under the laws of the State of Missouri, with its principal place of business located at 4643 Highway 54, Suite 701, Osage Beach, Missouri 65065.  On information and belief, Matty Gray Fitness, Inc. is also known as, or does business as, Mattygray Fitness, Inc.

3.      Defendant Matthew Gray is, on information and belief, a resident of the State of Missouri, residing at 3407 Wakefield Drive, Columbia, Missouri 65203.

4.      Defendant Christy Gray is, on information and belief, a resident of the State of Missouri, residing at 3407 Wakefield Drive, Columbia, Missouri 65203.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338, as this action arises in part under the Lanham Act, 15 U.S.C. § 1051, et seq.  This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

6.     This Court also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332(a)(1) because the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

7.     This Court may properly exercise personal jurisdiction over Gray pursuant to Section 18.E. of the Franchise Agreements entered into between the parties, which states that any litigation under the agreements will be venued in Minnesota and that the parties consent to personal jurisdiction in the Minnesota courts and waive any objection to such jurisdiction.

8.     This Court also has personal jurisdiction over Gray because they entered into contracts with a Minnesota-based corporation regarding the very subject of this action, they carried out a five-year relationship with a Minnesota corporation, and their actions have given rise to injuries in the State of Minnesota.

9.     Venue also is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claims presented in this action occurred in this judicial district.

## FACTS

### ATF's Business And The Names And Marks

10.     ATF is the owner of a distinctive business concept (the "System") for operating boutique fitness centers with the potential for minimal overhead and labor costs. It offers franchises to use this System, including ATF's methods, procedures, standards, specification, and Names and Marks.

4.

11.     ATF is the owner of the trademark Anytime Fitness® and certain other trademarks, trade names, service marks, logos, designs and commercial symbols (collectively the "Names" and "Marks").

12.     ATF has registered its "ANYTIME FITNESS" and "ANYTIME FITNESS EXPRESS" marks on the Principal Register of the United States Patent and Trademark Office, which have been given United States Trademark Registration No. 2,814,114, No. 3,302,636, and No. 3,316,351.  True and correct copies of these registrations are attached as Exhibit A.  This registration and other Names and Marks continue in full force and effect and are therefore now incontestable under the provisions of 15 U.S.C. § 1065.

13.     ATF and its authorized franchisees use the Names and Marks to distinguish their Anytime Fitness businesses from those of their competitors.

14.     ATF has expended substantial sums of money and other resources in developing, promoting, and establishing the Names and Marks throughout the United States, including the states of Missouri and Minnesota.

15.     As a result of ATF's efforts, customers have come to understand the Names and Marks as unique, distinctive symbols for the operation of ATF businesses and the products and services offered.

**Gray's Agreements With ATF**

16.     On or about January 23, 2006, ATF entered into a Franchise Agreement with Matty Gray Fitness, Inc., which granted the right to operate an Anytime Fitness center in Osage Beach, Missouri.  This Franchise Agreement was amended on October 31, 2008 and

January 13, 2009 (collectively the "Osage Beach Franchise Agreement").  A true and

correct copy of the Osage Beach Franchise Agreement is attached as Exhibit B.

17.     On or about November 21, 2006, ATF entered into a Franchise Agreement

with Matty Gray Fitness, Inc., which granted Gray the right to operate an Anytime Fitness

center in Warrensburg, Missouri.  This Franchise Agreement was amended on May 1,

2007 (collectively the "Warrensburg Franchise Agreement").  A true and correct copy of

the Warrensburg Franchise Agreement is attached as Exhibit C.

18.     On or about January 17, 2008, ATF entered into a Franchise Agreement with

Matty Gray Fitness, Inc., which granted Gray the right to operate an Anytime Fitness

center in Camdenton, Missouri.  This Franchise Agreement was amended on April 15,

2008 (collectively the "Camdenton Franchise Agreement").  A true and correct copy of the

Camdenton Franchise Agreement is attached as Exhibit D.

19.     Matthew Gray is an owner of Matty Gray Fitness, Inc. and has been the

manager of all three franchised locations.

20.     Christy Gray is also an owner of Matty Gray Fitness, Inc.

21.     Under each of the three Franchise Agreements, Matthew Gray is the

unconditional guarantor "for the payment of all amounts and the performance of the

covenants, terms and conditions in the [Franchise Agreements], to be paid, kept and

performed by the Franchisee" for the Franchise Agreements.  *See* Personal Guaranty

attached to each Franchise Agreement.

22.     Under the Osage Beach Franchise Agreement, Christy Gray is the

unconditional guarantor "for the payment of all amounts and the performance of the

covenants, terms and conditions in the [Osage Beach Franchise Agreement], to be paid,

kept and performed by the Franchisee" for the Osage Beach Franchise Agreement. *See*

Personal Guaranty attached to the Osage Beach Franchise Agreement.

23.     Matthew Gray and Christy Gray also agreed to be "personally bound by each

and every condition and term contained in the [Franchise] Agreement[s] and agree[d] that

this Personal Guaranty will be construed as though the undersigned . . . executed Franchise

Agreement[s] containing the identical terms and conditions of the [Franchise]

Agreement[s]." *See* Personal Guaranty attached to each Agreement.

24.     The Franchise Agreements were for an initial term of five years, with an

option given to Gray to re-franchise the businesses for additional five-year terms.

25.     As Anytime Fitness franchisees under the Franchise Agreements, Gray

obtained, among other things, use of the ANYTIME FITNESS mark and the other names

and trademarks licensed by ATF to its franchisees (collectively the "Names" and

"Marks"), marketing and advertising services, training programs, and highly confidential

proprietary manuals and other materials, including computer software, to be used in

connection with the operation of fitness centers.  With respect to the Names and Marks,

Section 3.B. of the Osage Beach Franchise Agreement provides:

> Your right to use and identify with the Marks and System
> applies only to the Franchised Location, and exists
> concurrently with the term of this Agreement and only so long
> as you are in complete compliance with our quality standards.
> You will have the right to use the Mark sand System only in
> the manner prescribed, directed and approved by us in writing.
> You will not have or acquire any rights in any of the Marks or
> System other than the right of use as governed by this
> Agreement.  Your use of the Marks and any resulting goodwill

will be to our exclusive benefit. If, in our judgment, your
conduct infringes upon or demeans the goodwill, standards of
uniformity or quality, or business standing associated with the
Marks or the System, you will immediately, upon written
notice from us, modify your use of the Marks and the System
in the manner prescribed by us in writing. You will not during
or after the term of this Agreement do anything directly or
indirectly which would disparage, infringe upon, harm, or
contest our rights in, the Marks or System.

26.     Gray also received, as an Anytime Fitness franchisee, the information and

know how to get their businesses up and running and then to successfully operate them,

including,

- What equipment to purchase;

- Club layout;

- The "menu" of services offered and the pricing of those services;

- Access to ATF's suppliers;

- Training in the methods of operating a co-ed fitness business;

- ATF's membership agreement, which has been prepared by ATF for
  distribution exclusively to Anytime Fitness franchisees;

- Training in the promotion and sales of fitness club memberships;

- Processing of membership and membership fees;

- Access to Anytime Health, which is an interactive health website provided to
  Anytime Fitness members;

- Access to a comprehensive security system and related technology that
  allows for proper security for a co-ed fitness business; and

- Numerous other trade practices of ATF and the Anytime Fitness franchise system.

27.     Gray essentially had the benefit of learning and using this entire "System" of methods, procedures, standards, specifications, and the Marks within the model that ATF created, whereby the "menu" of services is limited in order to succeed in this type of business.

28.     Others who have tried to adopt ATF's business model have added services or space that add expense and destroy this model, including such things as group shower rooms, saunas, hydro massage beds and daycare centers.  ATF's System works and its franchisees learn that System and therefore have significant advantages over their competitors.  ATF teaches its franchisees, and taught Gray, how to operate a successful fitness center.

29.     In exchange for the valuable services and other consideration provided by ATF, Gray agreed in each of the Franchise Agreements that they would not operate other fitness centers during the term of the Franchise Agreements.  Specifically, in Section 17.A. of the Franchise Agreements, Gray agreed that they would not:

> directly or indirectly, during the term of this Agreement, on your own account or as an employee, consultant, partner, officer, director, shareholder or member of any other person, firm, entity, partnership, corporation or company, own, operate, lease, franchise, engage in, be connected with, have any interest in, or assist any person or entity engaged in any other fitness center, wherever located, whether within the Protected Territory or elsewhere.

30.    Each of the Franchise Agreements also includes a post-termination covenant against competition. In Section 17.B. of the Osage Beach Franchise Agreement, Gray agreed that they would not:

> directly or indirectly for a period of two (2) years after the transfer by you, or the expiration or termination of this Agreement, on your own account or as an employee, consultant, partner, officer, director, shareholder, lender, or joint venturer of any other person, firm, entity, partnership, corporation or company, own, operate, lease, franchise, engage in, be connected with, have any interest in or assist any person or entity engaged in any other fitness center, which is located within the Protected Territory or within a twenty (20) mile radius of any Anytime Fitness center, wherever located, whether within the Protected Territory or elsewhere, if that fitness center operates using a keyless access system; provided, however, that in cities having a population of more than 50,000 persons, this restriction will be limited to a radius of five (5) miles from any Anytime Fitness center.

31.    The Protected Territory in the Osage Beach Franchise Agreement was an 8.5 mile radius around the Osage Beach Location. This Protected Territory is much larger than the 2 1/2 - 3 mile territories ATF normally grants its franchisees. The larger territory was agreed to by ATF in recognition that it is a rural area in which one fitness center draws from a wider region than in a more urban area. In compliance with that agreement, ATF refrained from placing any other Anytime Fitness club within the Protected Territory.

32.    The Camdenton and Warrensburg Franchise Agreements also have larger than usual Protected Territories of five miles each because they too are located in rural areas.

33.    Pursuant to Section 3.F. of the Osage Beach Franchise Agreement, Gray agreed that as a franchisee, they had the right to use ATF's "Copyrighted Materials," but

that those materials are the property of ATF.  The membership agreement form developed

by ATF is one example of ATF's Copyrighted Materials.

34.   Section 10.A. of the Osage Beach Franchise Agreement states:

> You acknowledge that all the information you have now or
> obtain in the future concerning the System and the concepts
> and methods of promotion franchised hereunder is derived
> from us pursuant to this Agreement, and that you will treat
> such information in confidence.  You agree never to, directly
> or indirectly, engage in or abet the misappropriation . . . or the
> disclosure, divulgence, or distribution of all or any part of the
> System and the concepts and methods of promoting franchises
> hereunder. . . .

35.   Section 16.B. of the Osage Beach Franchise Agreement requires that, upon

termination or expiration of the Franchise Agreement, Gray must

> immediately and permanently cease to use, in any manner
> whatsoever, all confidential information, approved Information
> System and related software, methods, procedures and
> techniques used by or associated with the System, and the
> Marks and distinctive forms, slogans, signs, symbols, logos
> and devices associated with the System, as well as any name,
> mark, symbol, logo or slogan similar to any of the Marks.

36.   As set forth in Section 9.O. of the Osage Beach Franchise Agreement, ATF

considers and designates the names and contact information for all Anytime Fitness

members, and the specific arrangements with those members, to be confidential

information:

> Ownership of Information.  All of the information we or our
> affiliates obtain from you or about your Anytime Fitness
> Center or its customers ("the Information") and all revenues we
> derive from the Information will be our property.  However,
> you may at any time during or after the term of this Agreement
> use, to the extent lawful and at your sole risk and
> responsibility, any information that you acquire from third
> parties in operating your Anytime Fitness Center, such as

customer data.  The Information (except for information you
provide to us or our affiliates with respect to you and your
affiliates, including your respective officers, directors,
shareholders, partners or equity members of your entity) will
become our property which we may use for any reason as we
deem necessary or appropriate in our discretion.

37.     In Section 17.E. of the Franchise Agreements, Gray agreed that ATF would

have the right to petition this Court for injunctive relief to enforce the provisions of the

Franchise Agreements relating to any covenants not to compete.

**Gray's Breaches of the Franchise Agreements**

38.     Despite the fact that the five-year term of the Osage Beach Franchise

Agreement ran until January 22, 2011, and in violation of the Osage Beach Franchise

Agreement, in late 2010, Gray changed the name of their Osage Beach Location to

"Fitness, Inc."  Upon information and belief, Gray intended to continue operating a

competing fitness center at the Osage Beach Location upon expiration of the Osage Beach

Franchise Agreement on January 22, 2011.

39.     By letter dated January 13, 2011, ATF terminated the Osage Beach

Franchise Agreement, effective January 14, 2011, as a result of Gray's breach of that

agreement.  A true and correct copy of the Osage Beach termination letter is attached as

Exhibit E.

40.     Prior to changing the name of the Osage Beach Location to Fitness, Inc. and

the termination of the Osage Beach Franchise Agreement by ATF, Gray transferred the

memberships of nearly all of the Osage Beach Location members to the Camdenton

Location in violation of the terms of the Osage Beach Franchise Agreement.  Therefore,

the members of the former Osage Beach Location are still members of the Anytime Fitness

12.

system.  As such, they have reciprocity with over 1,500 Anytime Fitness clubs, access to

ATF's proprietary health website, Anytime Health, and the other benefits of being an

Anytime Fitness member, but, upon information and belief, are still using the Fitness, Inc.

location as their primary workout facility.

41.     On information and belief, the members of the Osage Beach Location did not

ask to be transferred by Gray and have not been made aware of the transfer.

42.     On information and belief, in addition to continuing to be members of the

Anytime Fitness system, the members of the former Osage Beach Location are permitted

by Gray to use the Fitness, Inc. location.

43.     On information and belief, Gray is soliciting the same employees and

members from their ATF franchised businesses to their competing business.

44.     On information and belief, Gray is also signing up new members at the

Fitness, Inc. location to the Anytime Fitness system using the proprietary Anytime Fitness

membership agreement form.  Thus, the new members become members of Anytime

Fitness and Fitness, Inc.

45.     Despite changing the business name to Fitness, Inc. and the termination of

the Osage Beach Franchise Agreement, Gray has continued to use ATF's Names and

Marks, including its logo, on signage, floor mats, products, membership agreements,

business cards, and other stationery at the Osage Beach Location.  Gray has also continued

to use ATF's color and design scheme and layout for the Osage Beach Location as well as

the same keyless entry system for members.  Fitness, Inc. is essentially the same fitness

center as the former Anytime Fitness center operating at the same location as the former Anytime Fitness center, but it is now a direct competitor.

46.    Gray's dual role as the operator of both an independent fitness center and two Anytime Fitness locations gives a competitor access to all of ATF's confidential materials, including pricing, marketing strategies, sales techniques, and other competitive intelligence.

## COUNT I
## BREACH OF FRANCHISE AGREEMENT
### (Violation of Covenants Not to Compete)

47.    ATF restates and realleges each and every allegation contained in the paragraphs above.

48.    ATF and made and entered into several binding and enforceable Franchise Agreements under which Gray agreed that they would not own, operate, or be involved in any other fitness center during the term of the Franchise Agreements or for two years after the termination of the Franchise Agreements within a specified territory.

49.    The Warrensburg Franchise Agreement will not expire until November 2011, and the Camdenton Franchise Agreement will not expire until January 2013, and Gray is currently operating franchised fitness centers at both locations.

50.    Gray has breached Section 17.A. of the Warrensburg and Camdenton Franchise Agreements by owning, operating, or being involved in one or more other fitness centers while they are still Anytime Fitness franchisees.

51.    Gray has also breached Sections 17.A. and 17.B. of the Osage Beach Franchise Agreement by owning, operating, or being involved in one or more other fitness

centers, at the same location as their franchised Osage Beach fitness center, during the

term of the Osage Beach Franchise Agreement and within two years of its termination or

expiration.

52.     As a direct and proximate result of Gray's breaches of the Franchise

Agreements, ATF has suffered loss and damage the precise amount to be determined at

trial.

53.     ATF is also entitled to preliminary and permanent injunctive relief

prohibiting any and all conduct by Gray in violation of the non-competition covenants

contained in the Franchise Agreements.

**COUNT II**
**TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**

54.     ATF restates and realleges each and every allegation contained in the

paragraphs above.

55.     Despite the fact that Gray changed the name of their Osage Beach business

to "Fitness, Inc." and in violation of the limited license granted by ATF to Gray to use

ATF's Names and Marks, Gray wrongfully and improperly have used and continue to use

the Names and Marks in connection with their business.

56.     The wrongful use of the Names and Marks without authorization or consent

from ATF is a violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

57.     Gray's unauthorized use of the Names and Marks has and will continue to

cause confusion and mistake among both prospective and actual customers of ATF and its

authorized franchisees in violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

58.     In Section 16.D. of the Osage Beach Franchise Agreement, Gray agreed and acknowledged that their "continued use of the Marks after the expiration or termination of this Agreement will be without [ATF's] consent and will constitute an 'exceptional case' under federal trademark law (15 U.S.C. § 1117) entitling [ATF] to recover treble damages, costs and attorneys' fees."

59.     Upon information and belief, Gray's violations of the Lanham Act are willful and intentional and in conscious disregard of the rights of ATF.

60.     As a direct and proximate result of Gray's unlawful conduct, ATF has been, and will continue to be, irreparably and substantially harmed and injured in its business.  If Gray's infringement is allowed to continue, ATF will sustain further loss, damage, and irreparable injury.

61.     As a result of Gray's infringement of the Names and Marks, ATF has suffered loss and damage the precise amount to be determined at trial. ATF is also entitled to recover Gray's profits earned as a result of its infringement of the Names and Marks.

62.     ATF is also entitled to preliminary and permanent injunctive relief enjoining Gray from further and continuing infringement of the Names and Marks.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

63.     ATF restates and realleges each and every allegation contained in the paragraphs above.

64.     Gray's conduct constitutes trademark infringement in violation of the common law.

65.     Upon information and belief, Gray's conduct is willful, intentional and in conscious disregard of the rights of ATF.

66.     As a direct result of Gray's violations of common law, ATF has suffered loss and damage, the precise amount to be determined at trial.

**COUNT IV**
**BREACHES OF FRANCHISE AGREEMENT**

67.     ATF restates and realleges each and every allegation contained in the paragraphs above.

68.     In the Osage Beach Franchise Agreements, Gray agreed to follow all terms of the Franchise Agreement and ATF's System.

69.     Gray has breached the Osage Beach Franchise Agreement in several ways including, but not limited to, changing the name of their franchised location during the term of the Franchise Agreement, continuing to use ATF's Names and Marks outside of the limited license granted in the Franchise Agreement, and by transferring the Osage Beach members to the Camdenton Location without the permission of ATF.

70.     As a direct and proximate result of the breaches by Gray of the Osage Beach Franchise Agreement, ATF has suffered loss and damage in an amount to be determined at trial.

71.     ATF is also entitled to preliminary and permanent injunctive relief enjoining Gray from further and continuing breaches of the trademark license provisions of the Osage Beach Franchise Agreement.

17.

## COUNT V
## VIOLATIONS OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT

72.     ATF restates and realleges each and every allegation contained in the
paragraphs above.

73.     Gray's conduct, as described above, violates the Minnesota Deceptive Trade
Practices Act ("MDTPA"), Minn. Stat. § 325D.44, *et seq*.

74.     As a direct and proximate result of Gray's violations of the MDTPA, ATF is
entitled to preliminary and permanent injunctive relief enjoining Gray from further and
continuing acts of deceptive trade.

## COUNT VI
## MISAPPROPRIATION OF TRADE SECRETS

75.     ATF restates and realleges each and every allegation contained in the
paragraphs above.

76.     As an ATF franchisee, Gray has access to confidential information and trade
secrets.  Such information derives independent economic value from not being generally
known to, or not being readily ascertainable through proper means by others.

77.     ATF has taken reasonable steps to safeguard such confidential and
proprietary information.

78.     Gray has acted and intend to continue to act to misappropriate trade secrets
of ATF.  Gray's actions violate the Uniform Trade Secrets Act as adopted in the State of
Minnesota in Minnesota Statute § 325C.01, *et seq.*

79.     As a result of that misappropriation, ATF is entitled to injunctive relief
pursuant to Minn. Stat. § 325C.02(a) prohibiting the disclosure by Gray of such

18.

information and paying damages in an amount to be determined plus compensatory and

exemplary damages, as set forth in Minn. Stat. § 325C.03 and 325C.04.

## COUNT VII
## UNJUST ENRICHMENT

80.     ATF restates and realleges each and every allegation contained in the

paragraphs above.

81.     Gray has received and will continue to receive a benefit from ATF by using

the Names and Marks, without the authorization or consent of ATF, to advertise, promote,

and attract customers to a business unaffiliated with ATF.

82.     As a result of this wrongful conduct, Gray has been unjustly enriched, at the

expense of ATF.

83.     As a result of Gray's unjust enrichment, Gray should be ordered to disgorge

all profits made by and as a result of Gray's infringement of the Names and Marks and

Gray's breaches of the Franchise Agreement.  ATF should be awarded all losses and

damages it has suffered as a result of Gray's wrongful conduct, the precise amount to be

determined at trial.

## COUNT VIII
## UNFAIR COMPETITION

84.     ATF restates and realleges each and every allegation contained in the

paragraphs above.

85.     Gray's wrongful actions and omissions as described above constitute unfair

competition.

86.     As a result of Gray's wrongful actions and omissions, ATF has been and continues to be damaged.

87.     Upon information and belief, Gray's wrongful acts were committed knowingly, maliciously, willfully, and intentionally.

88.     As a result of Gray's unfair competition, Gray should be ordered to disgorge all profits made by and as a result of their wrongful actions and omissions.  ATF should be awarded all losses and damages it has suffered as a result of Gray's wrongful conduct in an amount to be determined at trial.

89.     ATF is also entitled to preliminary and permanent injunctive relief enjoining Gray from further and continuing acts of unfair competition.

## COUNT IX
## BREACH OF PERSONAL GUARANTIES

90.     ATF restates and realleges each and every allegation contained in the paragraphs above.

91.     As set forth above, Matthew Gray and Christy Gray are the personal and unconditional guarantors of the performance of the obligations owed to ATF under the Franchise Agreements.

92.     As a direct and proximate result of the breaches by Gray of the Franchise Agreements, ATF has suffered loss and damage in an amount to be determined at trial and is entitled to recover all such amounts against Matthew Gray and Christy Gray personally.

93.     ATF is further entitled to an order from the Court directing injunctive relief and specific performance against Matthew Gray and Christy Gray of all of Gray's obligations under the Franchise Agreements.

## COUNT X
## CLAIM FOR ATTORNEYS' FEES AND COSTS

94.     ATF restates and realleges each and every allegation contained in the

paragraphs above.

95.     Pursuant to the express terms of the Franchise Agreements, Gray is obligated

to pay all costs and attorneys' fees incurred by ATF in pursuing its rights and remedies.

96.     ATF has incurred and will continue to incur attorneys' fees and costs and is

entitled to recover all amounts incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anytime Fitness, LLC prays for entry of an Order of this

Court and judgment against Defendants Matty Gray Fitness, Inc., Matthew Gray, and

Christy Gray, as follows:

1.    For preliminary and permanent injunctive relief;

2.    For an award of damages in an amount to be determined at trial;

3.    For an award of treble damages under 15 U.S.C. § 1117;

4.    For an award of costs, disbursements, and attorneys' fees;

5.    For an award of prejudgment interest; and

6.    For such other and further relief as the Court may deem just and equitable.

Dated:  January 19, 2011

James M. Susag (261038)
Cynthia M. Klaus (27883X)
Larkin Hoffman Daly & Lindgren Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota  55431-1194
Phone: (952) 835-3800

Attorneys for Plaintiff Anytime Fitness, LLC

## <u>VERIFICATION</u>

I, Jennifer Yiangou, am the Vice President of Operations for Anytime Fitness, LLC. I have read the foregoing Complaint, know its contents, and believe the same to be true and correct, except as to such matters stated upon information and belief, and as to such matters I believe them to be true.

I declare, under penalty of perjury, that the foregoing Verification statement is true and correct. Executed at Hastings, Minnesota on January 18, 2011.

Jennifer Yiangou

1338694.1